UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------

CENTURY SURETY CO.,

                Plaintiff,   **MEMORANDUM & ORDER**
                                                                          16-CV-5133 (MKB) (VMS)

                v.

EURO–PAUL CONSTRUCTION CORP.,

                Defendant.

---------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

        Plaintiff Century Surety Company ("Century"), filed the above-captioned action on September 15, 2016, pursuant to 28 U.S.C. § 2201, seeking a declaratory judgment that it has no duty to defend or indemnify Defendant Euro–Paul Construction Corporation ("Euro–Paul") in an action in the Supreme Court of the State of New York, County of Queens (the "State Court") arising from a scaffold-related incident. (Pl. Compl. ("Pl. Compl."), Docket Entry No. 1.) After Defendant failed to appear or otherwise defend the action, Plaintiff sought and obtained a notice of default against Euro–Paul. (Entry of Default, Docket Entry No. 10.) On January 23, 2017, Plaintiff moved for a default judgment. (Pl. Mot. for Default J. ("Pl. Mot."), Docket Entry No. 11.) On February 8, 2017, the Court referred the motion to Magistrate Judge Vera Scanlon for a report and recommendation. (Order dated Feb. 8, 2017.) By report and recommendation dated August 21, 2017 (the "R&R"), Judge Scanlon recommended that the Court dismiss the Complaint without prejudice and grant Plaintiff leave to replead within thirty days of the date the

R&R is adopted.[1] (R&R 16, Docket Entry No. 16.) On August 28, 2017, Plaintiff filed a timely objection to the R&R. (Pl. Obj. to R&R ("Pl. Obj."), Docket Entry No. 17.) For the reasons set forth below, the Court adopts the R&R and denies Plaintiff's motion for a default judgment without prejudice.

I. Background

On or about May 15, 2013, non-parties Bogdan Choinski and Krzysztof Glowacki, employees of Euro–Paul, filed an action against South Westchester Realty Associates ("SWRA") in the State Court (the "First Action"). (First Choinski and Glowacki Compl., Case No. 9979/2013 ("First Action Compl."), annexed to Pl. Compl. as Ex. B.)[2] In their complaint, Choinski and Glowacki allege that on or about February 11, 2013, they were "lawfully working" at a location where "certain work[,] labor, services, and construction work was being

---

[1] Judge Scanlon filed the original report and recommendation on July 18, 2017, (Docket Entry No. 13), but subsequently filed an amended report and recommendation that supersedes the original report and recommendation, (Docket Entry No. 16). The Court, therefore, refers only to the superseding report and recommendation.

[2] The Court finds it appropriate to consider the filings in the underlying State Court action and the insurance policy Century issued to Euro–Paul for two reasons. First, the documents are referenced in Plaintiff's Complaint, and therefore, are incorporated into Plaintiff's Complaint by reference pursuant to Rule 10(c) of the Federal Rules of Civil Procedure. *See Kamholtz v. Yates Cty.*, 350 F. App'x 589, 592 (2d Cir. 2009) (holding that the defendant's affidavits were incorporated into the plaintiff's complaint where the complaint referred to the affidavits but did not append them); *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004) (holding that documents were incorporated where the complaint "explicitly refer[red] to and relie[d] upon" them in a section 1983 complaint); *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152, 154 n.4 (2d Cir. 2002) (holding that contracts were incorporated because the complaint was "replete with references to the contracts and request[ed] judicial interpretation of their terms"). Second, as discussed below, the determination as to whether an insurer owes its policyholder a duty to defend involves a comparison between the relevant insurance policy and the allegations in the underlying action, which also renders the documents essential to the Court's determination. *See Int'l Bus. Mach. Corp. v. Liberty Mut. Ins. Co.*, 363 F.3d 137, 144 (2d Cir. 2004).

performed," when they were "injured in a height/scaffold related accident." (First Action Compl. ¶¶ 20–22, 33–35.) Glowacki alleges that he fell from the "height/scaffold" (*id.* ¶ 36), and Choinski alleges that the "object/scaffold" fell on him, (*id.* ¶ 23). Choinski and Glowacki brought claims against SWRA, as the owner of the premises, for violations of New York Labor Law and tort liability, alleging that SWRA was "negligent, reckless and careless" for, among other reasons, "knowingly . . . allowing plaintiff[s] to work in an unsafe work place." (*Id.* ¶¶ 25–26, 37–39, 47–48, 50–51.)

On March 5, 2014, SWRA impleaded Agency Construction Corporation ("Agency"), Euro–Paul, and IJZ Associates Inc. ("IJZ") as third-party defendants, seeking contribution or indemnification for any liability found against SWRA in the First Action. (SWRA Compl., annexed to Pl. Compl. as Ex. C.) SWRA's complaint alleges that Agency acted as general contractor for the work being done on the premises, (*id.* ¶ 15), that Agency entered into a sub-contractor agreement with IJZ, and that "Agency and/or IJZ" entered into a separate agreement with Euro–Paul "for certain work" being done on the premises. (*Id.* ¶¶ 24, 32.) SWRA alleges that Euro–Paul and IJZ "managed, controlled, supervised, and directed the . . . [w]ork that Choinski and Glowacki were performing when the [i]ncident occurred." (*Id.* ¶¶ 29, 34.)

Prior to the filing of SWRA's third-party complaint, on September 19, 2013, Choinski and Glowacki brought a separate action in the State Court, directly against Agency (the "Second Action"). (Second Choinski and Glowacki Compl., Case No. 18710/2013 ("Second Action Compl."), annexed to Pl. Compl. as Ex. D.) As in the First Action, Choinski and Glowacki allege tort liability and violations of New York Labor Law. (Second Action Compl., ¶¶ 24–27, 37–40, 47–48, 51–52.) The factual allegations made by Choinski and Glowacki in the Second

3

Action describing the incident are identical to the allegations made in the First Action. (*Compare* First Action Compl., ¶¶ 20–24, 33–37, *with* Second Action Compl., ¶¶ 20–24, 33–37.)

On December 9, 2013, Agency impleaded Euro–Paul and IJZ as third-party defendants, seeking indemnification or contribution arising from any liability in the Second Action. (Agency Compl., annexed to Pl. Compl. as Ex. E.) Agency alleges that it had contracted with IJZ "to do work" on the premises, which in turn sub-contracted with Euro–Paul to perform work on the premises. (*Id.* ¶ 8.) Agency further alleges that after the incident occurred, it was sued by Choinski and Glowacki for "suffer[ing] personal injuries while performing construction work" on the premises. (*Id.* ¶ 7.)

The First Action and Second Action were thereafter consolidated into a single action in the State Court (the "Underlying Action"). (Pl. Compl. ¶ 17.) Euro–Paul demanded that Plaintiff defend Euro–Paul in the Underlying Action pursuant to a "Commercial Lines Policy" in force during the period of January 16, 2013 through January 16, 2014. (*Id*. ¶ 2; Commercial Lines Policy No. 801699 (the "Policy"), annexed to Pl. Compl. as Ex. A.) Plaintiff agreed to defend Euro–Paul under a partial disclaimer and reservation of rights, and, as of the commencement of this action, continues to do so. (Pl. Compl. ¶ 3.)

Plaintiff filed this action seeking a declaratory judgment that it is not obligated to defend or indemnify Euro–Paul pursuant to an exclusion provision within the Policy (the "Action Over Exclusion" provision). The Action Over Exclusion provision states, in relevant part, that the Policy does not cover "bodily injury to . . . an employee of the named insured arising out of and

in the course of . . . [e]mployment by the named insured; or [p]erforming duties related to the conduct of the named insured's business." (Policy at 61.)³

## II. Discussion

### a. Standards of review

#### i. Report and Recommendation

A district court reviewing a magistrate judge's recommended ruling "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). When a party submits a timely objection to a report and recommendation, the district court reviews *de novo* the parts of the report and recommendation to which the party objected. *Id.*; *see also United States v. Romano*, 794 F.3d 317, 340 (2d Cir. 2015). The district court may adopt those portions of the recommended ruling to which no timely objections have been made, provided no clear error is apparent from the face of the record. *John Hancock Life Ins. Co. v. Neuman*, No. 15-CV-1358, 2015 WL 7459920, at *1 (E.D.N.Y. Nov. 24, 2015). The clear error standard also applies when a party makes only conclusory or general objections, or simply reiterates its original arguments. *Chime v. Peak Sec. Plus, Inc.*, 137 F. Supp. 3d 183, 187 (E.D.N.Y. 2015) ("General or conclusory objections, or objections which merely recite the same arguments presented to the magistrate judge, are reviewed for clear error." (citation omitted)); *see also DePrima v. N.Y.C. Dep't of Educ.*, No. 12-CV-3626, 2014 WL 1155282, at *3 (E.D.N.Y. Mar. 20, 2014) (collecting cases).

#### ii. Default judgment

Pursuant to Rule 55 of the Federal Rules of Civil Procedure, there is "a 'two-step

---

³ Because the exhibits attached to Plaintiff's Complaint are not consecutively paginated, the Court refers to the electronic document filing system ("ECF") pagination.

process' for the entry of judgment against a party who fails to defend: first, the entry of a default, and second, the entry of a default judgment." *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 128 (2d Cir. 2011) (citing *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005)). However, the Second Circuit has an "oft-stated preference for resolving disputes on the merits," *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95 (2d Cir. 1993), and therefore "[a] plaintiff is not entitled to default judgment as a matter of right, merely because a party has failed to appear or respond," *LG Funding, LLC v. Florida Tilt, Inc.*, No. 15-CV-631, 2015 WL 4390453, at *2 (E.D.N.Y. July 15, 2015) (citing *Erwin DeMarino Trucking Co. v. Jackson*, 838 F. Supp. 160, 162 (S.D.N.Y. 1993)). "[T]he court may, on plaintiffs' motion, enter a default judgment if liability is established as a matter of law when the factual allegations of the complaint are taken as true." *Bricklayers & Allied Craftworkers Local 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Const., LLC*, 779 F.3d 182, 187 (2d Cir. 2015). "A default . . . only establishes a defendant's liability if those allegations are sufficient to state a cause of action against the defendant." *Taizhou Zhongneng Imp. & Exp. Co., Ltd v. Koutsobinas*, 509 F. App'x 54, 56 (2d Cir. 2013); *LG Funding, LLC*, 2015 WL 4390453, at *2 ("To determine whether the default judgment should issue, the [c]ourt examines whether 'the factual allegations, accepted as true, provide a proper basis for liability and relief.'" (quoting *Rolls-Royce PLC v. Rolls-Royce USA, Inc.*, 688 F. Supp. 2d 150, 153 (E.D.N.Y. 2010))).

### iii. Declaratory judgment

The Declaratory Judgment Act provides, in pertinent part, that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C.

§ 2201(a). For the purposes of the Declaratory Judgment Act, "actual controversy" means "whether the facts alleged, under all the circumstances, show that there is a substantial controversy between parties having adverse legal interests, or sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Golden v. Zwickler*, 394 U.S. 103, 108 (1969) (quoting *Maryland Casualty Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)); *see also Nike, Inc. v. Already, LLC*, 663 F.3d 89, 95 (2d Cir. 2011). "'[A] mere demand for declaratory relief does not by itself establish a case or controversy necessary to confer subject matter jurisdiction . . . .' '[Rather,] [w]here the remedy sought is a mere declaration of law without implications for practical enforcement upon the parties, the case is properly dismissed.'" *Mitskovski v. Buffalo & Fort Erie Pub. Bridge Auth.*, 415 F. App'x 264, 267 (2d Cir. 2011) (quoting *S. Jackson & Son, Inc. v. Coffee, Sugar & Cocoa Exch. Inc.*, 24 F.3d 427, 431 (2d Cir. 1994)).

Federal courts have "unique and substantial discretion in deciding whether to declare the rights of litigants" under the Declaratory Judgment Act. *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995); *Mariah Re Ltd. v. Am. Family Mut. Ins. Co.*, 52 F. Supp. 3d 601, 623 (S.D.N.Y. 2014); *see also Dow Jones & Co., Inc. v. Harrods Ltd.*, 346 F.3d 357, 359 (2d Cir. 2003) ("Courts have consistently interpreted [the Declaratory Judgment Act's] permissive language as a broad grant of discretion to district courts to refuse to exercise jurisdiction over a declaratory action that they would otherwise be empowered to hear."). The Second Circuit instructs district courts to consider certain prudential factors in determining whether to exercise their discretion to consider a declaratory judgment action:

> (1) whether the judgment will serve a useful purpose in clarifying or settling the legal issues involved; . . . (2) whether a judgment would finalize the controversy and offer relief from uncertainty[;] . . . (3) whether the proposed remedy is being used

7

> merely for procedural fencing or a race to res judicata; (4) whether the use of a declaratory judgment would increase friction between sovereign legal systems or improperly encroach on the domain of a state or foreign court; and (5) whether there is a better or more effective remedy.

*New York v. Solvent Chem. Co., Inc.*, 664 F.3d 22, 26 (2d Cir. 2011) (quoting *Dow Jones & Co., Inc.*, 346 F.3d at 359–60) (alterations in original).

### b. The R&R

Judge Scanlon recommended that Plaintiff's motion for default judgment be denied because Plaintiff has not "allege[d] sufficient facts related to Choinski's and Glowacki's employment by Euro–Paul or the accident that occurred to establish that it definitively arose out of and in the course of their employment." (R&R 16.) Judge Scanlon noted that, based on the pleadings in the Underlying Action, "it is also possible that the 'height/scaffold related accident' that allegedly caused their injuries was the result of forces unrelated to their employment, or that it occurred before or after Choinski and Glowacki were scheduled to work." (*Id.*) Judge Scanlon recommended that the Court grant Plaintiff leave to replead with greater specificity within thirty days of entry of the Court's order. (*Id.*)

### c. Plaintiff's objections to the R&R

Plaintiff objects to Judge Scanlon's recommendation that the Court deny its motion for default judgment. (Pl. Obj. 7–15.) Plaintiff argues that: (1) the Action Over Exclusion provision applies regardless of what "specific forces" caused the incident, and (2) the possibility that the incident occurred before or after Choinski and Glowacki were scheduled to work is in "direct contravention" of the allegations in their complaints in the Underlying Action, specifically, their allegations that "the accident occurred while [they] were both lawfully working at the job site." (Pl. Obj. 7–11.) For the reasons set forth below, the Court adopts Judge Scanlon's R&R.

8

### i. Contract interpretation under New York law

New York law provides that insurance policies should be "interpreted according to general rules of contract interpretation."[4] *Intelligent Dig. Sys., LLC v. Beazley Ins. Co., Inc.*, --- F. App'x ----, ----, 2017 WL 4127540, at *2 (2d Cir. Sept. 19, 2017) (quoting *Olin Corp. v. Am. Home Assurance Co.*, 704 F.3d 89, 98 (2d Cir. 2012)). Accordingly, courts must interpret insurance policies governed by New York law to "give effect to the intent of the parties as expressed in the clear language of the contract." *Morgan Stanley Grp. Inc. v. New England Ins. Co.*, 225 F.3d 270, 275 (2d Cir. 2000) (citation and internal quotation marks omitted). Words and phrases "should be given their plain meaning, and the contract should be construed so as to give full meaning and effect to all of its provisions." *LaSalle Bank Nat'l Ass'n v. Nomura Asset Capital Corp.*, 424 F.3d 195, 206 (2d Cir. 2005) (alteration, citation and internal quotation marks omitted). If the provisions of an insurance policy are "clear and unambiguous, courts are to enforce them as written. However, if the policy language is ambiguous, particularly the language of an exclusion provision, the ambiguity must be interpreted in favor of the insured." *Village of Sylvan Beach v. Trav. Indem. Co.*, 55 F.3d 114, 115 (2d Cir. 1995) (citation omitted).

---

[4] Where a federal court's subject matter jurisdiction is based on diversity of citizenship between the parties, as is the case here, the choice of law principles of the forum state apply to determine the governing substantive law. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). As Judge Scanlon noted in the R&R, the Policy does not contain a choice of law provision, (R&R 9 n.6), nor is the "principal location of the insured['s] risk," to which New York courts often look in determining the applicable substantive law, clear based on the record before the Court. *See In re Liquidation of Midland Ins. Co.*, 923 N.Y.S.2d 396, 401 (2011). Based on Plaintiff's objection to the R&R, Plaintiff assumes, without explicitly stating, that New York law applies. (Pl. Obj. 7–14.) Based on the factors New York courts consider to determine choice of law, the Court applies New York law. *See Certain Underwriters at Lloyd's, London v. Foster Wheeler Corp.*, 822 N.Y.S.2d 30, 30–31 (App. Div. 2006); *see also U.S. Underwriters Ins. Co. v. Beckford*, No. 93-CV-4272, 1998 WL 23754, at *2 (E.D.N.Y. Jan. 20, 1998) ("Under New York law, questions regarding an insurer's duties in respect to events that occurred in New York are governed by New York law." (citation omitted)).

### ii. An insurer's duties to defend and indemnify

New York courts have defined an insurer's duty to defend policyholders against claims as "exceedingly broad." *Atl. Ave. Sixteen AD, Inc. v. Valley Forge Ins. Co.*, 56 N.Y.S.3d 207, 209 (App. Div. 2017) (citation and internal quotation marks omitted). By contrast, the duty to indemnify is narrower than the duty to defend, and "arises only if the claim for which the insured has been judged liable lies within the policy's coverage." *CGS Indus., Inc. v. Charter Oak Fire Ins. Co.*, 720 F.3d 71, 83 (2d Cir. 2013) (quoting *Allianz Ins. Co. v. Lerner*, 416 F.3d 109, 115 (2d Cir. 2005)). "An insurer's duty to defend claims made against its policyholder is ordinarily ascertained by comparing the allegations of a complaint with the wording of the insurance contract." *Int'l Bus. Mach. Corp. v. Liberty Mut. Ins. Co.*, 363 F.3d 137, 144 (2d Cir. 2004) (citations omitted); *see also Emps. Ins. Co. of Wausau v. Northfield Ins. Co.*, 150 F. Supp. 3d 196, 200 (E.D.N.Y. 2015). "The duty to defend remains 'even though facts outside the four corners of the pleadings indicate that the claim may be meritless or not covered.'" *Euchner–USA, Inc. v. Hartford Cas. Ins. Co.*, 754 F.3d 136, 140 (2d Cir. 2014) (alterations omitted) (quoting *Auto. Ins. Co. of Hartford v. Cook*, 7 N.Y.3d 131, 137 (2006)). Accordingly, an insurer may only be relieved of its duty to defend on the basis of a policy exclusion if it demonstrates:

> that the allegations of the complaint [in the underlying action] cast the pleadings wholly within that exclusion, that the exclusion is subject to no other reasonable interpretation, and that there is no possible factual or legal basis upon which the insurer may eventually be held obligated to indemnify the insured under any policy provision.

*E. Ramapo Cent. Sch. Dist. v. N.Y. Sch. Ins. Reciprocal*, 54 N.Y.S.3d 413, 418 (App. Div. 2017) (alteration in original) (citations omitted); *see also Lantheus Med. Imaging, Inc. v. Zurich Am. Ins. Co.*, 650 F. App'x 70, 71 (2d Cir. 2016) ("When an insurance contract contains an exclusion provision, the insurer generally bears the burden of proving that the claim falls within the scope

of an exclusion by establishing that the exclusion is stated in clear and unmistakable language, is subject to no other reasonable interpretation, and applies in the particular case." (quoting *Village of Sylvan Beach*, 55 F.3d at 115–16) (citations omitted)). If, however, there is even a "reasonable possibility of coverage," the insurer "will be called upon to provide a defense . . . ." *Euchner–USA, Inc.*, 754 F.3d at 140 (quoting *Auto. Ins. Co. of Hartford*, 7 N.Y.3d at 137).

Therefore, to establish that the Action Over Exclusion provision operates to relieve Plaintiff of its duty to defend or indemnify Euro–Paul, a comparison between the Policy and the pleadings in the Underlying Action must establish that there is "no possible factual or legal basis" on which Plaintiff may be required to indemnify Euro–Paul for any losses in connection with the Underlying Action. *E. Ramapo Cent. Sch. Dist.*, 54 N.Y.S.3d at 418. The Court thus analyzes the language in the Action Over Exclusion provision to determine its applicability to the allegations in the Underlying Action.[5]

### iii. Action Over Exclusion provision

Plaintiff argues that it is not obligated to defend or indemnify Euro–Paul pursuant to the Action Over Exclusion provision in the Policy, (Pl. Obj. 4–15), which states that the Policy does not cover "bodily injury to . . . an employee of the named insured arising out of and in the course of . . . [e]mployment by the named insured; or [p]erforming duties related to the conduct of the named insured's business," (Policy at 61).

As noted by Judge Scanlon, the Policy does not define what constitutes conduct that "arises out of and in the course of" employment. (R&R 14.) Accordingly, the Court looks to

---

[5] Because the Court agrees with Judge Scanlon's analysis that the allegations establish that the incident caused a "bodily injury . . . to an employee of the named insured," (R&R 12–14), the Court focuses its analysis on whether the injuries "arose out of and in the course of" employment.

11

decisions from New York state courts that have interpreted such language in the context of worker's compensation disputes, given that "the purpose of [an] employer's liability exclusions is to avoid duplication of an employer's workers' compensation insurance by excluding coverage for claims by an insured employee against his own employer." (*Id.* at 14–15 n.7 (internal quotation marks omitted) (quoting *Hastings Dev., LLC v. Evanston Ins. Co.*, 141 F. Supp. 3d 203, 213 (E.D.N.Y. 2015), *aff'd in part*, *vacated in part*, --- F. App'x ----, ----, 2017 WL 2923921 (2d Cir. July 10, 2017)).)

### 1. "Arising out of" employment

"In the context of a policy exclusion, the phrase 'arising out of' is unambiguous, and is interpreted broadly to mean 'originating from, incident to, or having connection with.'" *Country–Wide Ins. Co. v. Excelsior Ins. Co.*, 46 N.Y.S.3d 96, 98 (App. Div. 2017) (quoting *Scottsdale Indem. Co. v. Beckerman*, 992 N.Y.S.2d 117, 121 (App. Div. 2014)); *see also Petroterminal De Panama v. Houston Casualty Co.*, 659 F. App'x 46, 51 (2d Cir. 2016). "The phrase 'arising out of' . . . requires only that there be some causal relationship between the injury and the risk for which coverage is provided." *Country–Wide Ins. Co.*, 46 N.Y.S.3d at 98 (alteration and citation omitted); *Maroney v. N.Y. Cent. Mut. Fire Ins. Co.*, 5 N.Y.3d 467, 472 (2005); *see also Burlington Ins. Co. v. N.Y.C. Transit Auth.*, 29 N.Y.3d 313, 324 (2017) (holding that "'arising out of' is not the functional equivalent of 'proximately caused by'" (citations omitted)).

### 2. "In the course of" employment

"An injury is said to occur in the course of one's employment when it was received at a time when the employee was doing the work for which he or she was employed." *Stead v. Rockland County*, 599 N.Y.S.2d 710, 710 (App. Div. 1993) (alteration, citation and internal

quotation marks omitted); *see also Ziccarelli v. N.Y.U Hosp. Ctr.*, --- F. Supp. 3d ----, ---, 2017 WL 2240224, at *8 (S.D.N.Y. Mar. 29, 2017). Under certain circumstances, New York state courts apply a statutory presumption that "an accident that occurs in the course of employment also arises out of that employment, unless there is substantial evidence to the contrary."[6] *Quigley v. Concern for Ind. Living*, 45 N.Y.S.3d 658, 659 (App. Div. 2017) (first citing N.Y. Workers' Comp. Law § 21(1); then citing *Hyatt v. Holliswood Care Ctr.*, 34 N.Y.S.3d 788, 789 (App. Div. 2016); and then citing *Enriquez v. Home Lawn Care & Landscaping, Inc.*, 909 N.Y.S.2d 567, 570 (App. Div. 2010)). However, establishing that an injury was sustained "in the course of" employment does not necessarily mean that it "arose out of" employment, as the presumption may be rebutted by evidence that the activity causing the injury was wholly unrelated to the nature of the worker's employment. *See Oathout v. Averill Park Cent. Sch.*, 36 N.Y.S.3d 764, 765–66 (App. Div. 2016).

### iv. Plaintiff has not met its burden based on the allegations made in the Underlying Action

Plaintiff argues that the Action Over Exclusion provision is triggered "whenever the injury occurs during a time when the injured person was 'in the course of his employment' or was 'performing duties related to the conduct of the [named insured]'s business.'" (Pl. Obj. 7 (alteration in original).) Plaintiff further argues that the allegation in the Underlying Action that Choinski and Glowacki were "lawfully working" on the premises when the incident occurred is

---

[6] While some New York state courts have held that the statutory presumption applies only to "unwitnessed" or "unexplained" deaths, *see Matter of Hawkeye Constr., Inc.*, 891 N.Y.S.2d 734, 735 (App. Div. 2010), other courts have applied it to any "unwitnessed" or "unexplained" injuries sustained in the course of employment, *see Quigley v. Concern for Ind. Living*, 45 N.Y.S.3d 658, 659 (App. Div. 2017) (citations omitted). Regardless of the circumstances giving rise to the presumption, the statutory framework suggests that "arise out of" and "in the course of" have distinct meanings.

sufficient by itself to establish that the Action Over Exclusion provision applies and that it has no duty to defend or indemnify Euro–Paul. (Pl. Obj. 9.) Plaintiff is incorrect on both points.

First, Plaintiff's reading of the Action Over Exclusion provision is belied by the clear terms of its contract with Euro–Paul. According to the Policy, the Action Over Exclusion provision excludes coverage for bodily injury to an employee of the named insured "arising out of *and* in the course of" either "employment by the named insured" or "performing duties related to the conduct of the named insured . . . ." (Policy at 61 (emphasis added).) The conjunctive phrasing means that an injury will not be excluded from coverage unless it satisfies both the "arising out of" and "in the course of" prongs of the exclusion. Reading these terms as identical would be contrary to the presumption-rebutting framework under New York's Worker's Compensation statute, and would render language in the Policy superfluous. *See Batales v. Friedman*, 41 N.Y.S.3d 275, 277 (App. Div. 2016) (holding that contracts should be read consistent with the "basic principle[] of contract construction that an interpretation which renders language in the contract superfluous cannot be supported" (citations omitted)). Therefore, while the underlying facts of an injury may be sufficient to establish both prongs, the definitions of those terms are separate and distinct.

Second, Plaintiff has not met its high burden of showing that "there is no possible factual or legal basis" upon which it may be required to cover Euro–Paul's losses in connection with the Underlying Action. *E. Ramapo Cent. Sch. Dist.*, 54 N.Y.S.3d at 413. Based on the complaints filed in the Underlying Action, Plaintiff has established that Choinski and Glowacki were on the premises "performing construction work" on the date of the incident, and were injured "in a height/scaffold related accident" when Glowacki fell from the scaffold, and when the scaffold fell on Choinski. (Agency Compl. ¶ 7; First Action Compl. ¶¶ 22, 23 35, 36; Second Action

14

Compl. ¶¶ 22, 23 35, 36.)  Taking these allegations as true, they establish that the injuries were sustained "in the course of employment," because they were "received at a time when the employee was doing the work for which he or she was employed."  *Stead*, 599 N.Y.S.2d at 710.

However, as noted above, Plaintiff must also establish that the injuries "arose out of" Choinski's and Glowacki's employment.  As the R&R noted, the allegations in the Underlying Action suggest that the injuries did in fact "arise out of" Choinski's and Glowacki's employment.  (R&R 15.)  However, for an insurer to abdicate its duty to defend, it must demonstrate not merely that an exclusion provision possibly applies, or even likely applies, but that there is "no possible factual or legal basis" that would lead to another conclusion.  *E. Ramapo Cent. Sch. Dist.*, 54 N.Y.S.3d at 413.  Plaintiff's citations to decisions from New York courts construing the phrase "arising out of" broadly are not sufficient to satisfy this burden, (*see* Pl. Obj. 6), because while New York courts have given that phrase an expansive definition, the determination of whether an injury "arose out of" employment is fact-dependent, *see Bigley v. J&R Music Elec.*, 702 N.Y.S.2d 474, 476 (App. Div. 2000) (holding that a security guard's injury at work did not "arise out of" his employment because evidence showed that it "resulted from a personal activity which was not sufficiently work related under the circumstances" (citations omitted)); *see also MacDonald v. Penske Logistics*, 823 N.Y.S.2d 613, 614–15 (App. Div. 2006) (holding that a truck driver's death was caused by a pre-existing heart condition and did not "arise out of" his employment); *but see Pedro v. Village of Endicott*, 762 N.Y.S.2d 177, 178–79 (App. Div. 2003) (holding that a firefighter's injury while repairing a personal vehicle in the fire station "arose out of" his employment because it was "not unusual" for firefighters to do so and the activity was "tolerated by department officials").  Therefore, while an employee's work-related activities need not be the direct or even proximate cause of an incident for an injury

15

to "arise out of" his employment, it does not follow, in light of Plaintiff's high burden, that this requirement is satisfied solely by alleging that an injury was sustained in the course of employment.[7] *Cf. Van Horn v. Red Hook Cent. Sch.* 427 N.Y.S.2d 85, 86 (App. Div. 1980) ("Where, as here, [the] claimant submits proof that an accident has occurred, that it occurred in the course of her employment *and offers some explanation as to how the accident happened*, the claimant's failure to precisely state the cause of the accident does not prevent the presumption [that his injury "arose out of" his employment] from being invoked" (emphasis added)).[8]

Without additional information clarifying the nature of Choinski's and Glowacki's employment and the circumstances surrounding the incident, the Court cannot say with the certainty required under New York state law that the Action Over Exclusion provision applies, and that Plaintiff has no duty to defend Euro–Paul.[9] *See Fitzpatrick v. Am. Honda Motor Co.*

---

[7] Plaintiff cites *Endurance American Specialty Insurance Co. v. Century Surety Co.*, 630 F. App'x 6 (2d Cir. 2015), for the proposition that its Action Over Exclusion provision is "clear and unambiguous." (Pl. Obj. 14–15.) However, Plaintiff has failed to meet its burden not because of an ambiguity in the Action Over Exclusion provision's language, but because Plaintiff has not pled facts bringing the claims in the Underlying Action "wholly within that exclusion" and conclusively establishing that it "applies in [this] particular case." *E. Ramapo Cent. Sch. Dist. v. N.Y. Sch. Ins. Reciprocal*, 54 N.Y.S.3d 413, 418 (App. Div. 2017); *see also Lantheus Med. Imaging, Inc. v. Zurich Am. Ins. Co.*, 650 F. App'x 70, 71 (2d Cir. 2016).

[8] Because the allegations in the Underlying Action would similarly not be sufficient to analyze whether the injury occurred "arising out of and in the course of . . . *[e]mployment by the named insured; or [p]erforming duties related to the conduct of the named insured*," the Court does not separately analyze this portion of the Action Over Exclusion provision.

[9] Plaintiff further argues that evidence submitted with its motion for default judgment establishes a "prima facie case" that the injuries sustained by Choinski and Glowacki "support[] the fact that Choinski and Glowacki were injured as Euro–Paul's employees working in the course of their employment." (Pl. Obj. 11.) The Court rejects this argument, because, as noted above, establishing that the injuries occurred "in the course" of employment is not sufficient to trigger the Action Over Exclusion provision by its own terms, without showing that the injury also "arose out of" the employment. Furthermore, as Judge Scanlon notes, such information must be pled in Plaintiff's Complaint to be properly considered by the Court on a motion for default judgment. (*See* R&R 17.)

*Inc.*, 78 N.Y.2d 61, 66 (1991) (holding that an insurer may not be relieved of their duty to defend "if the complaint contains any facts or allegations which bring the claim *even potentially* within the protection purchased" (emphasis added) (citation omitted)).

In arguing that it must "prove the truthfulness of the allegations of [the] underlying complaint before it can disclaim coverage," (Pl. Obj. 10), Plaintiff misunderstands the deficiency of its submissions. Plaintiff need only provide the Court with information from the Underlying Action that clarifies the alleged facts forming the basis of the claims made by Choinski and Glowacki, in order for the Court to determine whether the Action Over Exclusion provision is applicable to the facts here. *See Durant v. N. Country Adirondack Co-op. Ins. Co.*, 807 N.Y.S. 2d 427, 430 (App. Div. 2005) (holding that, when evaluating exclusion provisions under New York law, "a court may look to judicial admissions . . . or other formal submissions in the current or underlying litigation to confirm or clarify the nature of the underlying claims" (citing *Northville Indus. Corp. v. Nat'l Union Fire Ins. Co.*, 89 N.Y.2d 621, 635 (1997))). In order to maintain a proper focus on the comparison between the facts as they are alleged in the Underlying Action and the Action Over Exclusion provision in the Policy, Plaintiff should plead in any amended complaint the additional information necessary to determine whether the Action Over Exclusion provision applies to the claims in the Underlying Action, and attach as exhibits the relevant documents from the Underlying Action which clarify the alleged facts surrounding the incident.

## III. Conclusion

For the foregoing reasons, the Court adopts Judge Scanlon's R&R in its entirety and denies Plaintiff's motion for default judgment without prejudice. The Court grants Plaintiff leave to file an amended complaint within thirty (30) days of the entry of this Memorandum and Order in accordance with the Court's foregoing instructions.

SO ORDERED:

s/ MKB
MARGO K. BRODIE
United States District Judge

Dated: September 29, 2017
      Brooklyn, New York